Mr. Racknell, may it please the court. There were two grounds for the district court's grant of summary judgment in this case. The first was that Sensormatic's cameras did not send a first code signal to a controller that the controller uses to generate a second code signal that goes back to the camera. Instead, the district court held that in Sensormatic's systems, the controller knows the identity of the camera to which it has to send back the command based on the input number of the switch to which the camera is connected. In our brief, we showed that there are at least three protocols employed by Sensormatic that give rise to infringement, none of which was even mentioned by the district court in its opinion, though they had been briefed extensively. The easiest one to understand is the one that's mentioned at the bottom of page 18 of our opening brief. In plain English, a Sensormatic manual says that the controller knows the address of a camera from a message sent by the camera. Now, which protocol are you talking about here, the internet protocol? That's the Sensormatic. It's referred to at the bottom of page 18 of our brief. There's a quote from the Sensormatic manual. It says in plain English that the camera sends the address, and that's how the controller knows the address of the camera, not by the input number to which the camera is connected. Now, which page is this on? That's page 18 of our brief. At the bottom, we quote from the manual. But I might also mention, Your Honor, in the… Well, that's sort of hard to understand. Is there no expert testimony saying how this works? Yes, their expert agreed. That's a transcript. You'll see it on page 1890 of the appendix. My understanding of this protocol is that the camera does send a thumbwheel address back to the controller, but it does so only after the controller has given a direction to the camera as to its position, and that your argument is based on the notion of cycling, that there is thereafter potentially another command from the controller. I'm not understanding correctly. We're talking about how the controller initially learns when a camera has an alarm condition, for example. The camera sends its address to the controller, and that's how the controller knows which camera it has to send a command back to. Mr. Shields, their expert, on page 1090… What's an alarm condition? Oh, a camera detects an alarm breaking, for example, in the window. But the camera doesn't detect it, right? That's a sensor, a glass break sensor, a motion sensor. It's the camera. Yeah, but the camera sends its identity. No, the camera doesn't send it. No, no, no, the lines send it back. The what? Not the camera. The camera is the thing that takes in the video image. That's not the thing transmitting back the information from a motion sensor or a glass break sensor. It goes over the camera line. Over the line. Yeah, sure. That's right, but it's a sensor connected to the same line that the camera is connected to. It's not the camera itself detecting a glass break. It's a sensor that detects it, but the sensor is connected either to the camera or the camera line, but it's considered… No, but the sensor couldn't be detected to the camera. The camera wouldn't be sending the information back. It's an electrical line or an RF or something. I mean, there's some form of connection, but it's not the camera doing it. To be honest with you, Your Honor, I don't know whether the sensor is connected to the camera or right after the camera to the line. In either case, the identity of the sensor and the camera as a unit is coming in over the line to the controller, and that's the way the controller knows which camera to send a command to because the command is sending back to the camera. There's an alarm condition. The operator says to the camera, move left or move right. So it's going over one line. So I don't think it makes a difference whether the sensor is part of the camera or connected to the camera. Okay, but is the control signal move left or move right? Did you present evidence that move left or move right is what's done when the second code signal? Because that's what the claim requires, right? The claim said, with said control signals, when said second code signal coincides with a code allotted to said television camera. That's not even debatable. When a code goes back to the camera, the camera recognizes. You see, the command to move left goes to all the cameras. So the question is, how do you control the right camera? The camera you want to control is the one that detected or the sensor detected a break-in. So what happens is the camera sends an alarm signal to the controller and says, I'm camera number 15. We just had a break-in. The controller, the operator, sends a command, okay, move left. But that command is sent to all the cameras. So how do you get the one that detected the break-in to move left? Well, you send back the address that came in, the number 15. So 15 comes into the controller. When the operator says move left, the command to move left goes to all cameras, but together with the number 15. So it's only camera 15 that moves. And there's no question. What you've just described is the patented system, right? I mean, that's clearly the invention that you came up with. They send the code back to the camera. There's no question about that, or else the right camera would move. Let me tell you the problem I'm having. I read these briefs. I listen to you. You're like ships passing in the night. You describe the accused system completely differently. And what we are looking for is what's the record support for your view of how this system operates. You cite this manual. These manuals are not clear. And what you need in order to show infringement is some expert testimony that says that the claim limitations are satisfied here. Now, where is that expert testimony in the record? We have an expert witness who submitted an extremely lengthy affidavit. He's the inventor. He's also a world expert. He has an extensive affidavit that explains. Yeah, that reads like a lawyer's brief, you know? Yeah, there's no question. He wrote it. We consulted with him at length. Right. But his views of, you know, his sort of legal argumentation about it is not very helpful. The question is, what does he know based on his examination of the accused system and whether it satisfies the claim limitation? Where do we find, for example, on the censor net protocol, a discussion in his affidavit that goes claim limitation by claim limitation and says that they're satisfied? We don't have that, Your Honor, because that was not the basis of the motion. The motion was that there's the limitation of the second code signal corresponding that the second code signal is sent back to the camera is no debate. Because if you don't send back the number 15 to the camera, there's no way for the right camera to know that it's the one being spoken to by the controller. There's no question about that. The debate, what the motion is about, is how does the controller know in the first place which camera is sending the message? The claim requires that the camera send its identification. The number 15, that's the way the controller learns the identification. The motion was that that's not what happens in their system. What happens in their system is that the controller knows which camera is sending the message based on the number of an input to a switch that the camera is connected to. Well, that's exactly the point. You have different views about what's happening here. The question is what's the evidence? They made a motion for summary judgment. You have the burden of proof to establish infringement, and show us how you satisfy the burden of proof with expert testimony as to each one of these protocols as to how it satisfies the claim limitations. We did not discuss all the claim limitations. We only discussed the ones that they said are missing from their systems, and that's the one I just described and our documentary evidence, which is… So where is the testimony that that particular claim limitation, that is, that the controller receives the signal, an identifier from the camera, and controls based on that? Where do we find the testimony that tells us that that's what's happening in the accused system? It's in our brief, Your Honor. We have extensive citations in our brief to the testimony. Let's take the one that you're talking about, the Sentinet Protocol, besides their manual, which says that the system works the way they say it doesn't. And remember, it's only on one basis. I'm not interested at the moment in lawyer argument as to what's happening here. I want you to show me expert testimony in the record that tells me that this claim limitation is satisfied. You've shown me this manual, the excerpt from the manual on page 18. I can't understand what the manual is saying. I don't know whether it's describing the satisfaction of this claim limitation or not. I'm not an expert in these things. Page 1090, the appendix, page 1090. If you look at page 171, at the top, this is their expert witness. I ask, if a camera sends a message to the controller, and line 6, I say, now according to what it said here, doesn't the server, that's the controller, respond by using the source address of the client that the camera sent to it? His answer is yes. That's in our brief. We cite this testimony. We cite their manual. Throughout our brief on all three protocols, we cite their documents and their testimony. I don't know, you say that you're looking for testimony, here's testimony. For each of the protocols, we have testimony and we have documents, none of which was referred to by the district court. Okay, so that's the one for the sensor net protocol. Where's the one for the RS-422 protocol? Well, first we have an affidavit, our expert on page 1033. And then we have their expert on page 1035. Okay, so 1033. I'm sorry, 1055 in the Shields transcript. On page 29 of his deposition, if you look at line 4, he's talking about the 422 protocol that he just asked about. Line 5, the message would contain the address number that it got from the thumbwheel settings. That's the address, the code number 15 coming from the camera. This would indicate to the controller upon receiving that would know what dome number, if the dome number is set correctly, what dome number came online and was powered up. So it's the camera, the dome is the camera, that's sending its identification. Okay, and then it explains how the controller then sends a message back to the dome or the camera using that code number. And all of this is in our briefs, Your Honor. We've documented every one of the three protocols. But the fact that they respond doesn't mean they're sending control signals back. They could just be sending back something acknowledging receipt, couldn't they? I mean, in fact, isn't that what happens in most of these alarm instances? In the alarm instances, the alarm goes off and basically the controller sends back, okay, camera 5, I got the alarm. Stop telling me about it. No, you send back a command. Wait, what's the command? Stop sending me the alarm. Move left, move right. That's what I can't find evidence of, though, and it doesn't seem to state that here. Am I missing it? Show me where it says that, because the only thing I understood. Well, for one thing, it says right here, ask status information about the cabinet. That is what it's powered on. Yeah, that's different. That's not a control command, asking status. No. Are you there? Yes, I am. That's not a control command. They may call a command. They call that kind of a command. First of all, the claim talks about command, and they even call that kind of… No, the claim talks about control signals, and I'm trying to define that word because the district court didn't give us much in the way of any claim construction that I can tell from this opinion. Right. And so I'm trying to figure out what the word control signals mean, and I got from the spec. It means move left, move right, zoom in, zoom out. No, it's also what's your status, their own… I don't see that in the spec. Show me where control signals include what's your status, how I should interpret that word. I'm not sure that the specification in the patent talks about… Their manual refers to that kind of a… Not their manual. I'm trying to interpret your claim term because your claim term says second code basically is linked up with the control signal, and the control signal is do something, move left, move right. I don't see these protocols doing that. I'm just telling you where I am so you know where you need to get me to go. Well, claim one refers to the object that receives the control signals, a command circuit, so the claim even uses the word command. The distinction between control and command was not an issue in the case. I mean, everybody is treating anything that's sent back from the camera, all of these manuals… I don't see them as understanding or agreeing that when the camera sends back an acknowledgment vis-à-vis an alarm signal that that's an acknowledgment, that's a control signal. In all… I didn't see them agreeing to that. Maybe he'll say something different when he comes up. The manuals talk about when an alarm signal comes in. We just don't send back a signal that says, okay, I got the message. You don't have to send that back. What you do is you send back a command, move left or move right, I want to see the window. That's the way all these systems work. Let me put it this way. Let's take the RS-422 protocol. Let's assume that the only command in response to this first identifier signal relates to the animal and doesn't move the camera. Let's suppose that's the only command that results from this. That says turn off the alarm? Right. Is that correct? But is that a correct assumption, that it doesn't move the camera? No, it's not a correct assumption. If the operator doesn't move the camera, of course it's a correct assumption. No, no, no. Typically the operator moves the camera. But where's the evidence that it moves the camera as opposed to receives information about power on and power off and sends an acknowledgment of the power on and power off information? Where is the testimony that the camera is moved as a result of this? Because what Judge Moore is saying, and I think it's correct, is that the claim requires operating the camera. And what I'm saying is that to operate the camera, to send a command to a camera to do something, even if it's not to move, is to operate the camera. Suppose we reject that and we say that's not operating the camera. That the power on, power off is not operating the camera. That the camera has to move. It has to pan left, right, up, down, whatever. There is testimony that talks about moving the camera. I don't know where it is because that was not an issue that we addressed in the briefs. But let me see if I can find it. I can't find it right now, Your Honor. But there is, it's in this, if you look at page 1054, 1055, there's testimony in there about what happens in the 422, with the 422 protocol. In all of these cases, it's, you're not just sending a command. We got the alarm. When an alarm goes off, the whole idea is that you want to move the camera to see who's breaking in. So you're sending a command to the camera to move. But the issue of, we didn't address this distinction between a command to move and a command to stop sending an alarm. But there is testimony, I'm sure, and perhaps you can send it in later, about what is done when an alarm comes in. In any event, Your Honor, on this first issue, we did not discuss all the elements of the claim, which is something that yours did, Judge Stein. We simply took them at their word. They made a motion based on one thing that is supposedly missing from all of their systems. And we showed how there are at least... And that one thing is what? That when, in addition to the monitor, which is the second half of the motion, that one thing is that the claim requires that the code that goes back to the camera correspond to the code that comes in from the camera, or on the camera line, in anticipation of your question, Judge Moore. And they say that that's not what happens. They say that the controller does not know the address of the code of the camera based on the code that comes in from the camera, but rather by the switch, the number of the switch to which the camera is connected. And what I haven't mentioned, which is probably more important than anything, is that with the IP protocol, there is no switch. There are no input numbers to a switch. So it's impossible for there to be a defense when it comes to IP cameras. And their experts said, I don't know anything about IP cameras. I can't respond to that. So there's only testimony one way. And it is just incomprehensible to us how there's just no mention of any of our evidence. Counsel, I know that I asked the indulgence of my colleagues here to just ask you briefly to address the second alternative ground that the district court used. And in particular, if you could look at figure one in the patent. If I understand correctly, the signal, the first code signal you contend is received by item 34, the code extractor decoder. Am I right? Yes. And am I right that the code extract decoder is part of that larger box, which is 14? Yes. And that box is part of the controller? Yes. Okay. And we have the box up above, which is 10? Well, the box up above is 16. I'm sorry, 16. The big square is 10. I'm sorry, 16. The top third. I misspoke. 16. And 16 is the receiver? Right. Right. And that's the most important point in this whole issue. Yes. Yes. And this code that's being received is really not functioning in any way in connection with the low-pass filter, the interface, or the monitor. Am I correct? Yes. The code may get to the monitor, but the patent doesn't even say whether it does or it doesn't. It's ignored by the monitor. If it gets there, it's ignored. It's instead received by the controller and specifically the code extractor decoder? Right. What happens is you look at the top of that big box, there's a line coming in that goes to the low-pass filter. The video and the first code both come in on that line. When your claim 1 talks about the receiving means, receiving the first code signals, that's not actually reflected in figure 1? Yes, it is. Because box 16, that whole top third, receives both the video and the first code. It comes in on the left. And then it goes down that vertical line to the extractor. That's the way you explain it. Well, thank you. Let me ask one other question along this line, though, as a follow-up. In your patent in column 5, near around line, say, 58 or so, it talks about the output signals of the filter 54 supplied to television. I mean, I understand the receiving means, how it works. You've got that line that comes in. So technically, I take you at your word. It seems like it's consistent with this drawing that the code signal is coming in along that line. It goes into the low-pass filter. I'm going to assume your code signal is a higher frequency than your video signal, right? I mean, that's how the low-pass filter is going to work. It's going to peel off the code signal and only send the video forward. Is that right? The code signal, perhaps. It doesn't matter whether the code signal gets to the monitor or not. If you notice, the monitor has an arrow going into the monitor. Nothing comes out of the monitor. The code signal, if it gets to the monitor, it's just lost. The point is it goes down that vertical line, as Judge Coates said, to the controller. Yeah, so I got it. So, I mean, the code signal, I understand how that works. But my problem is, when I read that language in the prosecution history, I just kind of shook my head and said, why would they say it that way? You know, it doesn't really comport with your description of your preferred embodiment and how it works. And then I started thinking, but is it necessarily inconsistent with your preferred embodiment? And the statement you just made kind of leads me to the conclusion that, no, it's not necessarily inconsistent with your preferred embodiment.  So the language in the prosecution history, while it may have been a mistake for them to say it, would one of skill and the art necessarily see it as a clear and unequivocal error, which is kind of what our case law requires. More important than that, the mistake that was made was in the introduction to the part of the amendment that actually distinguished the prior art. If you look at pages 874 and 875 in the appendix, you'll see that the mistake occurred in the introductory portion. Then the amendment said, turning now, or something to that effect, to the prior art that was cited. When the argument was made distinguishing the prior art, it was said that the code signal that comes in goes to the receiving device. The receiving device is that entire top third of the box, box 16, as Judge Code pointed out. It was 100% correct. The code signal does go into the receiving means. I understood your complaint to be, though, when it says the principle of the present invention, therefore, is a transmission of a code from the camera to the monitor of the receiving means. I don't know why he said monitor. He should have said monitoring station. He said monitoring station. Everything would have been fine, because it is all the monitoring station. Or if he had just said receiving means, it would have been fine. It would have been fine had he said receiving means, or receiving device. But you're saying the code has, during prosecution, and you certainly know our constriction now with Festo and prosecution history of Staple. I mean, your prosecution says the code has to go to the monitor. What are we supposed to do about that? That was the mistake. The specification, let me explain. It's a mistake. You say it's a mistake. I certainly understand why you want to have it be a mistake, because it's really, really narrow. But if it's not inconsistent with your stack, I don't know. The specification correctly says that the code and the video come into the receiving device, and then the code goes down to the extractor, the controller. The video goes to the monitor. The claim has it correctly. The claim has both coming in, but only the video going to the monitor. The argument that was made to distinguish over the prior art was correctly made. The introduction has a mistake. It said monitor instead of monitoring station. But the argument to distinguish the prior art used the term receiving device, and that is correct. The code does go into the receiving device, the left of box 16. And even Judge Owen said in footnote 4 of his decision they made a mistake here. But you didn't just use the word monitor. You also used the word displaying device. No, displaying device, if you look at column 3, line 4 of the patent, box 16 is called a displaying device. The entire box 16 is called both a receiving device and a displaying device, even though the monitor is only part of it, the whole thing is called displaying device. That's why the argument made to distinguish the prior art was not wrong. Counsel, look at column 5 of your patent, where I was trying to direct you before, around line 58 to about 65. You say in this section that there's going to be an illustrative display superimposed on the video image and appearing on the monitor. It's unquestionable that that display corresponds to the second code signal. The second code signal is received. The first code signal is received. The second code signal goes back. Okay, well it corresponds to the code signal that identifies particularly this camera. The same code signal that allows the user to make sure they're turning the right one, zooming in, zooming out. And it creates a display that's going to go on the screen so the user knows, the operator knows when he's looking at this image, it's camera 16. So it's completely correlated and directly from those code signals. And it goes to the monitor. The code that gets displayed is the second code signal, not the first. If you look at the drawing, the drawing generates, the controller generates the second code from the first. And it's that second code that goes up to the interface. You see that, you see interface 54 in the drawing with a line coming into it at the bottom? That's the second code that goes there, that goes to the monitor. The first code signal, it may or may not get, if you think of your TV at home, the closed captioning signals are on the video signal. If they get to the monitor, if you switch on closed captioning, the code is displayed. Otherwise, it's not. It's just ignored. But nothing, as a matter of fact, I guess the best point for me to make, Judge Moore, is that even Sensomatic agrees that what this invention is about is that the first code comes in, something in the monitoring station generates a second code from it and sends it back to the camera. If it were the monitor, if the first code goes to the monitor, the monitor can't send anything out. If you think of your monitor on your desk, you've got a video cable coming in, and you'll see the arrow here going into the monitor in the drawing, nothing comes out. The monitor can't generate a second code signal to send to the camera. I agree with you, but your invention could require that it go to both places, and that's what your prosecution history might be interpreted to suggest that you do. It would contradict the specification, contradict the claim, and contradict the argument in the prosecution, as to be that correctly described how it works. Counsel, the claim says comprising. It doesn't preclude the code from going to the monitor. Yeah, but also what it says is that the code and the video come in, and it only says that the video goes to the monitor, not the code. Right, so the code could go to the monitor, and you'd be standing here accusing someone of infringement if they had such a device, so clearly the claim could require that as well, if the prosecution history so narrowed it. Yeah, but it could or it could not. The way it's described, the code does not go to the monitor. The way it's described, or if it does, it's ignored. What you pointed out is that the… Mr. Rackman, we probably, unless any of the panel members have further questions, I think we've given you 16, 17 minutes extra here. We'll give you two minutes for rebuttal. Okay, thank you. And Mr. Levine, if you need extra time, you can have extra time. May it please the Court, Mark Levine for the penalty of censurabatic. I want to pick up on a point that Judge Cope made in terms of the controller and the monitor. And looking at the figure, figure one, Judge Cope made the point that it's code 34 that gets the first code signal, then does something with it. But the key here is that in the initial claim, the original claim, which is at A53, the original claim had the controlling means receiving the first code signal, and that was the code extractor decoder getting it, and the receiving means receiving the video signal. That was changed. It was changed in the amendment, whose remarks are the subject of the remarks we're talking about, at A71. And in the change, it specified that instead of the controlling means getting the first code signal, the receiving means get them. So now the question is, given, and then you have explanation that when the receiving means is getting the code signal, this is at A74 and 75 in the prosecution history, it is the monitor of the receiving means that gets them. There's nothing inconsistent between that, between the claim... Correct. But it specifies, it's a means plus function claim, so it says it's receiving means for receiving the signals. So you look at the specification and also the prosecution history explaining the specification to determine what the structure is. And here in the prosecution history, it specifies that the structure for receiving the first code signal, something that wasn't in the original claim, that that structure is the monitor of the receiving means. I don't understand that. I mean, that whatever is going to receive the first signal also has to be able to generate the second signal, right? Not necessarily. Why not? Well, for one thing, the claim was amended to specify that the receiving means receive the first code signal. Obviously, it goes on to the controlling means as well. But the distinction that's made, the change that's made in the claim is that the receiving means gets it before the controlling means. And if you look at figure one, figure one shows box 16 being the receiving device, but there are three specific devices. There's three structural devices within there. And Mr. Rackman agrees or states that none of those different structures process the first code signal. So what he's suggesting is that the claim… Well, that's not right. That's not right. He admitted that the first code signal… Of course the low bandpass processes, in a general sense, the first code signal, right? I mean, because the first code signal and the video signal are coming in on the same line. It's got to both go into the low pass. And low pass just presumably stops the first code signal from going any further and just passes along the video. Well, you don't know that, actually. Of course you know that. Because when the patent talks about the function of the low pass filter, it doesn't say it's to stop the first code signal. It says it's to stop the control signal that's coming out of the controller. And that says… But clearly the first code signal is also coming along on that line, isn't it? Yes, the first code signal is coming in from the camera along with the video signal. Right, on that same line. Correct. And so that's why when I asked him whether the first code signal was necessarily higher frequency such that it's peeled off, and he said, well, not necessarily. It might pass along to the monitor, I believe, is what he acknowledged. Right. But I think that Judge Stike's point is, if it goes to the monitor, how's the monitor supposed to send it back? Clearly it's supposed to be going somewhere else. Correct. Because somebody's got to respond to it and send it back. And otherwise the claim would be inoperable as written, and that's not right. Well, I think you interpret the claims as written, and whether or not they're valid or invalid is a question for a different day. So there may be an issue about invalidity, but it's not one this Court needs to determine or get into right now. But aside from these stray references to the monitor and the prosecution history, prosecution history is clear enough that it's describing the invention in the same way that they're describing it now, right? Well, not really. The reason is because what the plaintiffs are describing now is the invention as it was originally claimed, with the first code signal going to the controlling means. It was amended. The key point is that those remarks that were made were in the context of an amendment changing that. But don't the remarks describe it going to the controller? The remarks actually describe that it's going to the monitor. I understand the references in there to it's going to the monitor, but take out those stray references to the monitor. Ignore them. Understood. It's describing the signal going to the controller, isn't it? It describes the signal going to the receiving means, actually. That's what the claim says. Presumably, then, it goes on to the controller as well. But the claim, as amended, differentiated that it goes to the receiving means first. And it must have been something that the patentee viewed as important because it changed, it amended the claims to specify that. That's the key, maybe the only change in the amendment at A71 compared to the original claim at A53, which is changing it to specify that the receiving means, as opposed to the controlling means, get this first code signal. I want to... Well, but let's assume that's correct, that the first signal goes into the receiving means and then it goes to the controller. That same thing happens in the accused system, right? In the accused system, there is evidence that... Well, in the accused system, there isn't evidence on whether or not a code from a camera goes to anything that would be determined to be called a receiving means. Basically, that's not an issue that came up. The only issue that was focused on is whether a code goes to the monitor, and the evidence is undisputed that it does not. In other words, there are these other structures of the receiving means, the low-pass filter and the interface, and because of the way in which this motion was filed, which was an early summary judgment motion, leaving other potential non-infringement issues for later, we didn't get into whether or not any kind of code from the camera goes to anything that would be described as a low-pass filter or an interface in the accused system. Okay, so my question is, take out, scrub out for the moment, hypothetically scrub out these references to the monitor in the prosecution history. The prosecution history doesn't then create any estoppel. It's a problem for infringement on this theory, right? I think that's, yes, that's correct. There might be other issues for non-infringement, but it wouldn't be based upon the code not going to the monitor. To answer that last question from Judge Dyke, do you also need to incorporate not only the reference to the monitor, but the displaying device? Well, it's interesting with the reference to the displaying device. Mr. Rachman said it means the same as the receiving device, and in the specification as written when the claims, the original claim was written, that was right because the original claim said all the receiving device does is display. It is the displaying device. As amended, the claim says that the claim does more, or that the receiving device does more. The receiving means not only displays, it also receives the first code signal. So, as amended, the displaying device, it's pretty clear from the remarks, refers to the monitor because that is the device that displays. Counsel, how would you respond to the evidence that Appellant pointed out to us, A1033 and otherwise, that shows that he clearly did present some evidence that contradicts the District Court's finding when the District Court found that the Sensormatics CCTV systems, and it's unfortunate he didn't break out the three of them because, you know, I think that might have helped, but when he found that the Sensormatics CCTV systems controllers do not create a second code signal corresponding to a first code signal that is generated and sent by the camera, I don't know, that seems to me to be at least an issue of genuine fact that has been raised about the accuracy of that conclusion. Judge Moore, I want to, in response to that, I want to pick up on the point that you were asking about, which is it's not just... But that's a different issue. What I went to is the control signals point, and that's a different issue. I want to know specifically what you, because he didn't mention control signals in any of this. This was not, the control signal part of it was not his decision on the first point in his summary judgment finding. Well, I think it was. It may not have been written exactly that way, but I think it was. For instance, and let me just get to this because I saw this just before we started hearing, on page A4 in the opinion, which is page 3 of the opinion, at the bottom, Judge Owen said, rather, in sensorimatic system, the controller addresses commands to the cameras based upon their respective video input numbers, the parenthetical there, not based on the thumb wheel addresses of the cameras. And then at the top of A4, he says the thumb wheel address is never sent to serve as the basis for a command address or any other code. So I think this notion of looking at the commands is something the district court looked at. And the reason is because when we phrased it, when we framed the issue in our motion for summary judgment, the way we framed it wasn't that there isn't ever any kind of code that's sent back and forth. It's that there's not a command or control signal operating the camera based upon that. So you acknowledge there is a first code, there is a second code in these systems. It's just not that those don't form the basis for the control signals. The answer is kind of. And the reason is there are some stray messages, so to speak, or individual times, individual instances where you can have a code from the camera and then a response from the controller that uses the code from the camera for addressing. But the question is what are those used for? Are those used for turn the camera on or off or move the camera left or right? And the answer is no. Though there are individual instances where they're just used for sending status messages in particular. So if they were used for turn the camera on or off, then you would acknowledge it falls within the claim limitation? Turning it on or off, yes. And in RS-422, that's not what happens. Okay, but what about they receive an alarm and the response is turn the alarm off? Or what is your status? Well, what if the response is turn the alarm off? That's not operating the camera. And the claim requires not just a control signal but operating the camera pursuant to that control signal. That's part of the language of Claim 1. And turn the alarm off is not operating the camera. Operating the camera is turning the camera on or off. Or turning the camera, move left or right or up or down or focusing the lens. That is what the specification talks about in terms of operating the camera, not just turning off an alarm sensor. And I want to note that there's testimony directly on this from our witness, Mr. Shields, who described how our system works. At page A198, paragraph 18, he explains the address set within the camera's housing is not sent to the controller or another aspect of the receiving apparatus for the purpose of controlling the camera. In some systems, the thumbwheel address may be sent to the controller for non-control purposes. For example, the thumbwheel address may be sent to indicate that the camera is turned on or that it already has received a command from the controller. These transmissions are not used by the controller in any subsequent control command. Okay, that's very nice testimony. But your problem is this, that we're talking about summary judgment. The question is, is there conflicting testimony on this? And if you take particularly the internet protocol and you look at A1025, there seems to be contrary testimony from Mr. Edelman. And, you know, particularly in paragraph 25 in the last sentence there. The answer is that is the only testimony that you have on the internet protocol. There's no basis given for that. That's particularly the kind of— Well, it doesn't have to—why does it have to give a basis? I mean, this isn't a conclusory statement about the accused system infringes or something like that. It's a specific description of how the system works. And, you know, what are we supposed to do with this? You say there's no basis for it. It's incorrect. But that's what a fact finder is supposed to do when there's a genuination of material fact. It's sort that out and figure out who to believe. Well, two things. Number one, you have Mr. Elberbaum in his deposition, as opposed to the lawyer written affidavit, saying that where in the internet protocol where you get the address for the camera is actually from the operator entering it in. Where does he—what page does he say? Where is this? One second. A1202, page 46, line 18. 46, line 26. Line 18. And it goes on then to— I don't see what you're saying. Why don't you read us the language you're talking about? Sure. It's the cameras are assigned—it's A1202 on page 46, line 18. The cameras are assigned IP addresses, correct. Answer, the IP address is assigned to the IP video server. And then he goes on. And I guess maybe the key point is 47, line 13. Who is it that assigns the IP address to the video server? Answer, the operator of the system or the installer of the system, the one who set up the system. And then line 22, in the Intellix IP system, though, the operator assigns the IP address to the video server. Correct. Answer, again, operator or installer or the one who sets up the system. And the guide sets it forth explicitly— Wait, wait, wait. I don't understand how that contradicts the Elderbaum testimony. Because the Elderbaum affidavit has this conclusory statement at the bottom of paragraph 25 that the address that the controller uses comes from the camera. Yeah, but all he's saying in his deposition testimony is how the number gets assigned in the first place, not how it's used in the system. In his affidavit, he says when it receives the packet, it uses the source address to derive a corresponding destination. I don't see that the deposition is contradicting that. Well, the deposition explains how it is when it's installed. And then A971 shows you how it's installed. But installed and operated are different. That's the problem. They aren't necessarily different. What you have—all you have on the installation— Okay, so you're saying there's a conflict between his deposition testimony and his affidavit. Again, wouldn't that be a question of fact? Well, there's case law. To the extent that you have a conflict between a person's affidavit and his deposition testimony, the deposition testimony controls. But you just acknowledged that the deposition testimony, it could be operating and installing could be the same. It might not be the same. The deposition testimony uses one word. The affidavit uses another. It's clearly not as clear as you would like it to be, obviously. Sure. Let me put it this way. The evidence is undisputed that at the time of installation for Intel X IP systems, the person enters in the IP address of the camera. That's the first point. But then the question is, what happens during operation? The only evidence that LVEX has provided that during operation the address comes from the cameras is this conclusory statement at the bottom of paragraph 25 of the Elderbaum Affidavit. There's nothing else beyond that. There's nothing giving support for that. There's nothing pointing to any place in manuals or anywhere where that's actually occurring. So what? I mean, it may not be credible. At the trial, it may be rejected. But for summary judgment purposes, why isn't it sufficient? Because mere conclusory assertions don't raise genuine issues of fact, and that's under the pure gold opinion of this Court, as well as the opinion that you wrote in the Farron case. Yeah, but I don't think that those are talking about a statement as to how a system operates like this. Well, the statement as to how... Well, we'll look at the cases. Well, it's obviously not as to how this kind of system operates. But the statement is just it gets the address from the cameras. There's no support for it whatsoever other than this lawyer-written affidavit. That's not enough. That's just a mere conclusory statement. It doesn't give you the kind of background that you need. You compare that, for instance, to the statements that Mr. Elberbaum gives on RS-422, where he goes through a specific example of this power-on. And we agree that when the camera's powered on, it sends a message to the controller. The question is, what does the controller do with that? Yeah, I think we understand that. Well, what about his references on the RS-422 and the sensor net protocol? Right, well, let me address them individually because they're different protocols. On RS-422, the references that Mr. Rackman gave while he was up here simply stand for the point that you have an instance in RS-422 where the camera sends a signal with an address saying, I'm on, I've been turned on. And then the controller, if it's on, will respond back with a status saying, okay, got you. A response saying, I heard you, I understand. The question is, what's done based upon that? Nothing. And the evidence, and there's no evidence that LDEX can point to that there are any control signals that are operating the camera pursuant to those in response based upon the address given by the camera. In fact, the undisputed evidence from the Shields Affidavit, paragraph 18, that I point to is that the operation of the camera in RS-422 is based upon the address that's entered in given the video input. That's RS-422. As to the sensor net, the only example that Mr. Elberbaum pointed to was this client server issue in the manual. And he pointed to page A1027 from Elberbaum, and what that really is doing is it's just quoting A1130 from the manual. And then he pointed to some Shields testimony. Let me get to it in one second, because the Shields testimony is based upon this manual reference. At A1130, there's a reference to the client and to the server, and it explains that the client sends information, and the server uses the source address of the information received from the client. So the question is, who's the client and who's the server? And here, there is a reference at A1120 in this manual, A1120, that gives an example where the touch tracker, which is the controller, is the client, and the dome is the server. In other words, you have the camera using the address information it got from the controller, not vice versa. For this claim, the way it's written, you have to have the controller using the address it received from the camera. Now, he pointed to Shields testimony at A1090, and it's important to look at that, because Mr. Rackman started at line 6 of page 171, and you have to look at what the question was right before that, on line 2. It's a hypothetical question that's asked. If a camera sends a message to the controller, and that is the first message in a client-server transaction, okay, and then he goes on and talks about what happens in that hypothetical. He doesn't say that ever occurs. In fact, when asked for an example... Wait, the next question is, does that describe what happens in the sensor net protocol? The answer, well, I wouldn't make it absolute. This is the general description, but it seems okay. Yeah, it's referring to the text that's in the protocol. And then you will look at line 15. Can you give me an example of it? And look at the example that he gives. The example that he gives is, if a controller wants to send a PAN command, it would be the client, and the dome would be the server. So, Mr. Shields, when he's talking about this, the way it actually works is, when asked for an example is, where the controller is the client, and the dome, or the camera, is the server. That's very different than what LBEX wants to have, which is the reverse situation. And I guess the way I put it this way is, the manual describes a client-server interchange. It gives an example where the controller is the client, the dome is the server. It doesn't give the reverse example. There is no record evidence that LBEX can point to that the camera actually acts as the client, other than one hypothetical question asked of Mr. Shields. There is no evidence that in operation of the system, the camera actually does act as the client. In fact, the evidence is that the controller does. Thank you. Thank you. Mr. Rackman, you have two minutes. Four brief comments, Your Honor. The change to the amendment, I'm sorry, the change to the claim in the amendment, originally it said controlling means gets the code. If you look at the drawing, the controlling means first goes into the receiving means, then the code goes down. So the amendment was made to more accurately reflect what the drawing shows, that the code goes into the receiving means, and from there it goes to the controlling means. That's why I think it was changed from controlling means to receiving means. There are three separate sections in our brief judgement where we did separate out and consider each of the three protocols. So we give a repeat with references to testimonies and exhibits in each. On page 3, on page 8, 525, I didn't have the answer before, I have it now. On page 8, 525, you'll see that with the controller that they have, and it works with all of the protocols, that when an alarm is triggered, it can automatically, the controller runs a specific pattern judgment. That means the pattern is the movement of the counters. So when an alarm is triggered, you'll see on page 8, 525, that what happens is that the counters start to move. I don't think it makes a difference whether you have the control systems or commands to move or commands to do something else like reporting the states, but in any event, that's where you have movement. And the last point I made is that on page 8 of our brief, on the last point that Mr. Levine made, you'll find a discussion that this whole thing can be, between a client and a server, the communication can be triggered by either one. Either the camera can talk first to the controller, or the controller can talk first to the camera. And at the last point, I want to say that with the IP protocol, everything is done over one wire. So there is no way that a controller can ever learn which camera is talking to it, unless the camera identifies itself and says, I'm camera 15, there's been an alarm, I just turned on, I'm going to sleep, whatever it is, the communication has to start from the camera, because there's only one wire. And it's the camera that's reporting. I think you're out of time. Thank you. Case is submitted.